## American Radiator & Standard Sanitary Corporation v. Crawford et al.

June 21, 1949.

712

Selligman & Greenebaum for appellant.

Charles Leibson and James Graves for appellee.

OPINION OF THE COURT BY JUDGE HELM—Affirming.

The appellee, Prince Crawford, was awarded compensation by the Workmen's Compensation Board. This award was affirmed by the Jefferson circuit court. Appellant prosecutes this appeal from that judgment. This claim was filed August 29, 1945.

Appellee entered the employ of appellant about June 13, 1923, and was employed by it more or less continuously until April 29, 1942. At the hearing before the Board on January 24, 1946, it was stipulated that:

"1. On or about January 16, 1935, the parties filed with this Board their joint voluntary written election to operate under the provisions of the silicosis amendment to the Workmen's Compensation Act of Kentucky, and said election has never been revoked or set aside.

"2. From and after April 29, 1942, plaintiff, Prince Crawford, has been totally disabled by reason of silicosis.

"3. On and prior to July 25, 1938, the plaintiff's regular rate of pay was not less than 70c an hour, and thereafter and until April 29, 1942, his regular rate of pay was not less than 50c an hour."

It was also stipulated that appellee was first employed by appellant June 13, 1923, and worked in its

brass foundry unit until August 13, 1923; that he was employed as a laborer in its smallware sand blast August 29, 1923, until April 29, 1924, when he was transferred to appellant's tub foundry as a laborer where he worked until August 28, 1924; that he worked as a trucker in its smallware sand blast from May 18, 1925, to July 7, 1927, and again from February 20, 1929, to June 25, 1930, and that he worked as a blower in its smallware sand blast from May 26, 1936, until July 25, 1938.

Appellee testified that he is 41 years of age; that he worked for appellant for around 16 years; that during all of that time he worked in and around sand and silica dust—"right in it;" that he inhaled "plenty of it;" that "it didn't * * * ever make me so sick until I began to get short winded and couldn't do much work;" that it affected his lungs. He first discovered that he was suffering from silicosis the day before he was taken out of the sand blast; he knew it then "because I went to the T. B. Clinic" in Louisville. On July 25, 1938, appellee was removed from the smallware sand blast department and made a yard laborer. He continued this until December 16, 1938, when he was transferred to the janitor department where he worked until April 29, 1942. As janitor he worked first in appellant's brass building; then in the lobby of its Shipp Street entrance; then in the smallware grinders rooms, or grinders dressing rooms—there were two rooms. He was there for around two years. When asked if he inhaled or breathed any dust there, he replied: "Plenty of it." When asked as to his health before he went to work for appellant, he said: "I would say I was in perfect health." When asked if the dust he inhaled from 1938 until he quit in 1942 affected his health, he replied: "Yes, sir, it sure did." Since May 1, 1942, he has not "been able to do any kind of work at all."

Between May 1, 1942, and August 12, 1942, Crawford received $15 per week for thirteen weeks under a policy which he had with the Aetna Life Insurance Company. Appellee states that after May 1, 1942, he wrote a letter to the management of appellant asserting a claim for compensation; that on August 12, 1942, appellant began sending him $15 checks each week, and that it continued to send $15 checks to him each week from Aug-

ust, 1942, until September, 1945, a total of $2,646.76. When he requested a lump sum settlement they stopped sending the checks. He did not have any written agreement with appellant with reference to compensation payments.

R. A. Vollmer, a manager for appellant, states that the $15 per week checks sent to appellee, Crawford, were payments out of appellant's welfare fund and not compensation payments. Appellee states that he asked Mr. Vollmer about the checks being sent him, and about the letter which accompanied the checks to the effect that they were "gift" checks. Crawford says Vollmer told him "Well, that's all right what the letter said * * * he told me they were compensation checks, it didn't matter what it said in the letters. * * * I just taken Mr. Vollmer at his word."

Dr. W. Stewart Carter examined appellee about July 1, 1945. He found that appellee "had a silicosis involving both lungs." When asked a hypothetical question setting out his work at appellant's plant and that he had inhaled sand dust or silica over a long period of time, and asked as to the cause of appellee's silicosis, Dr. Carter stated: "There is no question but what he contracted silicosis out at the Standard."

Charles E. McNeal, an industrial engineer, appellant's plant engineer, estimated that appellant uses from 50 to 60 tons of moulding sand daily. He described the buildings at appellant's plant. As to silica dust, he says: "What is a safe concentration and what isn't is still an argument." Asked "How much silica dust * * * must be inhaled by any individual over a given period of time before they can contract silicosis?" he said: "I don't think there is anybody can answer that question."

D. E. Hoffman, appellant's chemist, stated that the concentration of dust in the air where appellee worked from 1938 until his employment was terminated in 1942 amounted to from 4,000,000 to 9,600,000 particles per cubic foot; that of three dust counts in the Double S Club room, the first was 5,200,000, the second 5,000,000, and the third 6,400,000; at the Shipp Street entrance the count was 9,600,000, the second count was 5,700,000; in the yard the count was 4,000,000; in the brass building the count was 4,300,000; in the smallware grinders dress-

ing room the count was 8,400,000 particles per cubic foot of air. It was in this room that Crawford did a great part of his work during the last two years of his employment. Hoffman stated that his chemical analysis over fifteen years showed the average free silica content of the dust in appellant's plant to be 70 per cent. Mr. Hoffman stated that he had made quite a study of silicosis; had read all the principal medical and chemical text. When asked as to the concentration of dust considered harmful or safe, Hoffman stated: "Most of the experts in the country at the present time consider that as long as you are under 15,000,000 particles per cubic foot that is workable air."

W. W. Stalker, industrial hygienist with the Division of Industrial Hygiene of the Kentucky State Health Department, who has devoted much time in recent years to a study of the silicosis hazard, testified for appellee. He stated that 5,000,000 particles of free silica per cubic foot of air is an injurious exposure. He stated that a workman performing duties in an atmosphere containing a dust concentration of from 4.3 to 9.6 million particles per cubic foot of air with an average free silica content of 70% is "an injurious exposure."

Appellant in its brief says:

"This appeal from the Jefferson Circuit Court presents for consideration two legal questions: First, was the employee's claim for Workmen's Compensation benefits barred by limitations and, second, if the claim was not so barred, to what credits is the employer entitled? * * * The grounds upon which review is sought and the errors relied on by appellant may be summarized as follows:

"(a)   Under the Workmen's Compensation Act as it existed during the period in question, an employee's claim for disability benefits for silicosis was barred unless, as the Statute *expressly* provided, such claim was filed within *one (1) year after the last injurious exposure to silica dust.* The purpose of this case is to determine both what constitutes an injurious exposure to silica dust and more particularly the date when the appellee, Crawford, was last injuriously exposed.

"(b)   In the instant case appellant furnished employment to appellee after his last injurious exposure

to silica dust. In the course of that employment he received wages which totaled Forty-three Hundred and Thirty-Five Dollars ($4335.00), or an average of approximately Twenty-Two Dollars and Fifty Cents ($22.50) per week. After he left appellant's employ the appellee received *gifts* from the appellant which totaled Twenty-six Hundred and Forty-six Dollars and Seventy-six Cents ($2646.76)."

Honorable J. M. Wolfinbarger, Referee, in his opinion, after summarizing the stipulations at the hearing, says the only matters left open for consideration are:

"1. Is the silicosis from which the plaintiff is suffering, a result of his inhalation of silica dust over a period of time and while he was employed by the defendant in its factory * * *.

"2. If plaintiff's condition was caused by the inhalation of silica dust while in the employ of the defendant company, was the plaintiff barred by limitation from filing his claim, since he quit work on or about May 1, 1942, and did not file his claim until August 29, 1945, * * *·

"We will dispose of contention No. 2 first, * * * the defendant began, August 12, 1942, to pay the plaintiff $15.00 per week, and continued to make these payments until Sept. 5, 1945, * * * a total of $2646.76. * * * This plaintiff quit work on account of his condition on May 1, 1942, and the defendant knew his condition and began to make payments to him of $15.00 per week, the exact amount he would have been entitled to, if they had, or did, acknowledge that he was entitled to compensation under the Act. The plaintiff says he did not recognize the payments as gifts, but thought they were compensation, and before he received the first check, he wrote to Mr. Bleakeley, the personnel manager of the defendant company, and the $15.00 check came within a few days, and it will be noticed that the check does not say if it is a gift or for compensation due. When the plaintiff did understand the defendant was claiming the payments to be gifts, he complained about it, so he says, and a Mr. Vollmer, the personnel director at that time, for the defendant, told him that no difference what they called it, it was payments on his compensation.

"This leads us to the point of determining if it is the purpose of the Compensation Law to have an employee injured, whether it be by a traumatic injury, or contraction of silicosis, as in this case, and then permit the defendant to string the plaintiff along and make payments of the proper amount of his compensation for over a year, and then plead limitation on the claim, when he believed and had a right to believe, that he was drawing voluntary payments on account of his injury, and that he would not be prejudiced by accepting them. We think this contention of limitation is untenable.

"Limitation does not run from the time of the injury complained of, where voluntary payments have been made, but it begins to run from the cessation of the voluntary payments, * * *

"The first contention of the defendant, that is, that the plaintiff's condition is not the result of his inhalation of silica dust in the plant of the defendant, and the question of how much siliceous dust the plaintiff came in contact with, and how much of it this man must inhale in order to cause silicosis, goes beyond the ability of the layman or the lawyer, and delves into the realm of chemistry and medical science. * * *

"There is no question that the plaintiff had contracted silicosis in the year 1938, and the employer knew it and gave him a different job on that account. This change must have been made in recognition of the fact that by reason of the surrounding conditions and the presence of silica dust where he had been working, it was not safe to keep him on the same job. His condition became worse, until May 1, 1942, when he became totally disabled, with the same trouble, silicosis."

It is stipulated that from and after April 29, 1942, appellee has been totally disabled by reason of silicosis. From the record it is apparent that this total disability from silicosis results from appellee's many years of exposure to large amounts of silica dust while in the employ of appellant, and it appears that this injurious exposure to silica dust continued up until April 29, 1942.

Mr. Wolfinbarger finds: "That as a result of the plaintiff's exposure to silica dust over a long period of time in the plant of the defendant, he contracted silicosis

718

and as a result he is permanently and totally disabled therefrom, * * *.''

On full Board review, the full Board approved this finding. On these questions the evidence was conflicting. The Board found for appellee. We have often held that the findings and award of the Compensation Board, if supported by substantial, competent evidence, are conclusive, West's Ky. Digest, Workmen's Compensation, Key 1939. Here, under that rule, the evidence was sufficient and the finding of the Board is conclusive. That being true, we do not reach the other questions raised, except the credits to which appellant is entitled.

Appellant contends that it, under what is commonly known as the "Ditty Rule," is entitled to deduct the amount of the wages ($4335) paid appellee for his services from July 25, 1938 to April 29, 1942. It appears that appellee's wages previous to July 25, 1938, were considerably more than they were after that time. That being true, the Ditty Rule does not apply here. Warner et al. v. Lexington Roller Mills, Inc., 306 Ky. 142, 206 S. W .2d 471, 175 A. L. R. 722; Browning v. Moss Williams & Co., 306 Ky. 520, 208 S. W. 2d 495.

The Board "ordered and adjudged that the defendant shall have credit on this award for the sum of $2646.76," the amount the Board found that appellant voluntarily paid appellee as compensation. The Board awarded appellee $7500, less a credit of $2646.76. The Jefferson circuit court approved this award.

The judgment of the circuit court is affirmed.