## American Radiator & Standard Sanitary Corporation v. Brentlinger et al.

November 22, 1949.

Selligman & Greenebaum for appellant.

T. J. Nohalty for appellees.

JUDGE HELM—Affirming.

Appellant filed a petition in the Jefferson Circuit Court appealing from an award of the Workmen's Compensation Board in favor of appellee, Bessie Mable Brentlinger, as an individual, and as mother and custodian of Blanch C., Mary E., and Geneva A. Brentlinger. The court dismissed the petition. Appellant appeals from that judgment.

On April 10, 1944, David L. Brentlinger, husband of appellee, Bessie Mable Brentlinger, and father of the above-named infants, filed application with the Board against appellant for adjustment of claim, alleging total permanent disability because of the inhalation of silica dust on and before December 19, 1943, and for some twenty years while in appellant's employ, the inhalation causing the destruction of his normal lung tissue and tuberculosis. His application noted Dr. Wyborney as attending physician. Brentlinger died July 20, 1944. On September 7, 1944, appellees filed a pleading with the Board, styled "Revivor," in which they set out that Brentlinger had filed application for adjustment of claim for compensation with the Board; that he died July 20, 1944; that he left surviving him the petitioner, Bessie Mable Brentlinger, and the above-named dependent children, and praying that the Board allow each of them compensation in accordance with the Compensation Law of the State of Kentucky.

The original record of the Compensation Board is before us. It is a jumble of pleadings and depositions; not in order; the pages are not numbered, and the record—a large one—is without an index. The record contains, it seems, all of the pleadings and evidence from the time Brentlinger filed his application up to the present time.

Appellant filed an answer to Brentlinger's application, and on September 19, 1944, filed a supplementary answer pleading that Brentlinger's claim was filed by him more than one year after his last exposure to silica dust, and his death occurred more than two years after such last exposure. A stipulation was filed, agreeing (1) that Brentlinger and appellant were operating under the provisions of the Workmen's Compensation Act, KRS 342.001 et seq.; and (2) that "by joint voluntary applications signed February 1, 1939, and September 24, 1942, said parties had accepted and were operating under the provisions of the silicosis amendment to the Workmen's Compensation Act of Kentucky."

In the record which appellant has brought to this court is the deposition of David L. Brentlinger, taken May 23, 1944. He was 52 years of age. It was stipulated that appellees, Bessie Mable Brentlinger, was his wife, and that he had three dependent children. He had worked for appellant for nearly twenty-one years; he had worked in the tub grinding department for seventeen years; they got the sand off the tubs by running them through the rim grinder; from the sand "there was much silica dust in there * * * he was in a fog all the time;" there was not any ventilation where he was; he worked there up until they quit making tubs. After that, he worked in the magnesium department. It was stipulated that he was first employed April 15, 1925, and worked in the tub cleaning department until June 23, 1942, except for a short time in 1931 and 1932; that he returned to work in the magnesium finishing department September 24, 1942, and worked there until December 20, 1943.

On May 18, 1944, Arthur Brentlinger, 29 years of age, a son of David L. Brentlinger, stated that for five years he worked in the same department as his father. Asked as to the condition of the department where tubs were ground, he said, "It was dusty * * * it was so dusty you couldn't tell one thing from the other." Asked as to the kind of dust, he said, "Silica dust and sand." The dust cleared very little when the grinding stopped. They had no exhaust fans; it was "pretty dusty" where his father worked. The sand blasting was near where his father worked. Silica dust is produced from the blasting of sand.

David A. Brentlinger, son of David L. Brentlinger, maintenance carpenter for appellant, had access to the whole plant; was familiar with the tub grinding department. They had a hand sand blast machine in the magnesium department; they used sand in that department; used it up until December, 1943; when they used the sand blast "it was pretty dusty" in that department.

Brentlinger was in Waverly Hills Sanatorium. On the same day, Dr. Benjamin L. Brock, who has specialized in diseases of the chest and who was Medical Director of Waverley Hills Sanatorium and Tuberculosis Controller of the Louisville and Jefferson County Health Department, testified that Brentlinger was admitted as a patient at the sanatorium February 28, 1944; that he gave history of having worked in silica dust for the past twenty years; from this history, his observation of the patient and X-rays of him, he diagnosed the patient's condition as silico-tuberculosis. He says, "It has been shown very definitely that silicosis predisposes to tuberculosis. A very large percentage of patients with silicosis die of tuberculosis. It has been estimated by authorities, such as Dr. Gardner of Saranac Lake, * * * that 75 per cent of silicosis patients die of pulmonary tuberculosis." Brentlinger is now "permanently and totally disabled." He says, "In autopsy * * * you can demonstrate silicosis conclusively * * * by an incineration test."

Dr. Vernon J. Wyborney, resident physician of Waverley Hills Sanitorium, specializes in chest diseases. On May 25, 1944, he stated he took history, made physical and X-ray examinations of Brentlinger. He says, "Silicosis predisposes to tuberculosis. I believe at least 75 per cent of silicosis cases are followed by tuberculosis." His diagnosis was "very advanced silico-tuberculosis." As resident physician at Waverley Hills, he has quite a number of silico-tuberculosis cases. The only incontestable method of demonstrating silicosis is by an incineration test made on autopsy.

Dr. Oscar O. Miller, specialist in tuberculosis and diseases of the chest, testifying for appellant, stated that from "a history of Mr. Brentlinger's past occupation and the physical examination of his chest and interpretation of X-rays obtained from Dr. Ira Kerns,

"I could find no evidence of silicosis." A man with advanced silicosis would be prone to develop tuberculosis; there is "no treatment for silicosis * * * it is a deadly disease." Asked as to the so-called incineration test made on autopsy to determine the presence or absence of silicosis, he stated, "The incineration test probably at that time will show the silicon dioxide content of the lungs. * * * A normal lung will show 1.13 milligrams per gram. Carrying over two milligrams per gram would indicate the individual had been exposed to a dusty atmosphere."

Otto A. Hoffman, Chief Chemist for appellant, made dust counts about the plant of appellant. He made six counts in the magnesium department. The largest counts in the magnesium department were one five million particles per cubic feet, and one six million particles, 50 per cent silica he guesses, average size four microms.

Dr. A. W. Homberger, Professor of Biochemistry at the School of Medicine in Louisville, received the lungs of David L. Brentlinger on July 21, 1944, after his death, from Waverley Hills Sanatorium. He was asked to determine the percentage of silicon-dioxide in the lung tissue. He says, "I found that the lung tissue contained 7.6 milligrams of silicon-dioxide per gram of dried lung tissue." Asked if that indicated the patient was suffering from silicosis, he stated, "It is a concensus of opinion that when it runs over two milligrams per gram of tissue * * * it has an excess of silicon-dioxide present."

Honorable W. E. Begley, Referee, on February 4, 1947, delivered an opinion, 24 pages in length, summarizing the entire record and evidence in this case. He says:

"* * * According to the evidence of deceased, he worked for defendant for a period of about twenty years, seventeen years of which time he worked in the sanding department, which, in our opinion, produced sil'ca dust which was injurious to health, and such as would likely cause a worker to contract the disease of silicosis. * * *

"The undisputed, and undisputable fact from the

evidence is that after the death of deceased, Brentlinger, the test made of a portion of his lung tissue showed he did have 7.6 per cent of the ash, of silica. (7.6 milligrams of silica dioxide per gram of lung tissue.) This we think from a preponderance of the evidence is an unusual and dangerous deposit of that substance in the lung, and a sufficient amount to produce the disease of silicosis, notwithstanding much evidence to the contrary. We are of the opinion that, from all the evidence, and reasonable deductions to be drawn therefrom, that there was silica dust in the magnesium department during the time deceased worked there, up until December 20, when he quit work, which was charged with silica dust to the extent that deceased was injuriously exposed thereto. * * *

"We concur in the opinion expressed in the evidence that 7.6 milligrams of silicon-dioxide of dried lung tissue, indicates and proves that there was 'undue exposure' to that dust * * * and is 'above the level of safety.' Dr. Homberger stated 'In my opinion the amount this particular man had would indicate that he had silicosis,' and this we find as a matter of fact from the evidence. * * *

"We are constrained to hold, and to believe from the evidence, that David L. Brentlinger was totally disabled from performing manual labor from the date he quit work until he died, and died of the disease of silico-tuberculosis, contracted while an employee of the defendant, and that his disease and death grew out of and in the course of his employment.

"It is also found as a fact that the company had full knowledge and notice of the condition of deceased, and his disabilities within the meaning of Section 342.316, KRS.

"* * * we are holding that the last injurious exposure of deceased to silica dust was when he ceased to work for defendant on December 20, 1943, * * *."

The findings of the Referee, in substance, were: Brentlinger and appellant were operating under the provisions of the Compensation Act, including silicosis. The wage of decedent was sufficient to authorize maximum compensation; appellant had due and timely notice

of the injury and condition and claim for compensation. Decedent contracted silicosis while in the employ of appellant, in the course of his employment, causing total disability to perform manual labor on December 20, 1943, and died "from the disease of silicosis, or silico-tuberculosis, on July 20, 1944." After his death, his wife filed her petition and application herein on behalf of herself and dependent children. At the time and prior to the death of Brentlinger, and for more than one year, his wife and three children were each dependents of the deceased. Appellee, Bessie Mable Brentlinger, for herself and three children, was awarded compensation at the rate of $12 per week for 400 weeks, not to exceed the total sum of $4,800, with interest on past due installments.

On April 15, 1947, Honorable E. Poe Harris, then Chairman of the Board, and recently a member of this court, delivered an opinion adopting the findings, rulings and award of Referee Begley of January 25, 1947, as the findings, rulings and award of the full Board. On appeal these findings were adopted by the Jefferson Circuit Court.

Here, appellant insists (1) the evidence was not sufficient to sustain the findings that Brentlinger's disability or death was caused by silicosis; (2) appellee's claim is barred by limitation because Brentlinger's claim was not filed within one year after his last exposure to silica dust, and because his death did not occur within two years from such exposure; and (3) because appellee's petition that they receive death benefits was not sufficient.

From the above summary it is apparent that the testimony was conflicting, but there was substantial evidence to sustain the finding that Brentlinger's disability and death were due to silicosis. The Referee and the full Board found that the decedent's last injurious exposure to silica dust was had within one year before he filed his claim. There is, we believe, sufficient evidence to sustain this finding.

The petition for death benefits is meager and inapt, but it has been treated as sufficient by the parties and those hearing this case up to the present time. Under all the circumstances and facts of this case, we believe

it is sufficient. The recent case of American Radiator and Standard Sanitary Corporation v. Crawford, 310 Ky. 711, 221 S. W. 2d 684, throws much light on this case. There we had the same plant, about the same time, and some of the same witnesses as here.

This case was carefully and thoroughly considered by the Board. There was substantial, competent evidence to support the findings of the Board. In such cases we are not authorized to set aside the Board's findings. See 19 Ky. Digest, Workmen's Compensation, Key 1939.

The judgment of the circuit court, affirming the findings and award of the Board, is affirmed.