**EASTERN COAL CORPORATION,**
**Appellant,**

v.

**Donnie R. MULLINS; The Special Fund; Honorable Richard H. Campbell, Jr., Administrative Law Judge; and The Workers' Compensation Board, Department of Workers' Claims, Appellees.**

**No. 91–CA–2832–WC.**

Court of Appeals of Kentucky.

Jan. 8, 1993.

William J. Baird III, Baird, Baird, Baird & Jones, P.S.C. Pikeville, for appellant.

Ralph Rowland Case, Pikeville, for appellee, Mullins.

Peter J. Naake, Labor Cabinet, Louisville, for appellee, Special Fund.

Before HAYES, HOWERTON and WILHOIT, JJ.

HOWERTON, Judge.

Eastern Coal Corporation appeals from a unanimous opinion of the Workers' Compensation Board rendered November 1, 1991, and authored by Mr. Greathouse affirming an award of an Administrative Law Judge (ALJ). The question on appeal is whether the ALJ and the Board erred by failing to give Eastern credit against the workers' compensation award for monthly disability benefits it pays to Donnie R. Mullins from a disability pension plan, which Eastern fully funds for its employees. This is a legal issue of first impression, and under the unique facts in this case, we agree with the Board that there is no offset. We therefore affirm. Further, the opinion of the Board presents a full disclosure of the facts, the specific issues involved, and a well-reasoned analysis of the law. We adopt the opinion of the Board as the opinion of this Court, and we quote it in full.

GREATHOUSE, MEMBER. Eastern Coal Corporation ("Eastern") appeals from an Order rendered January 23, 1991, by Hon. Richard H. Campbell Jr., Administrative Law Judge ("ALJ"), which sustained a petition for reconsideration of his earlier Opinion and Award dated November 9, 1990. In the Order appealed from, the ALJ determined that Eastern was not entitled to credit against

its workers' compensation liability to Donnie R. Mullins ("Mullins"), with the exception of a three month salary continuation period, for payments made pursuant to a vested disability pension retirement plan, provided without cost to the claimant, where the provisions of the plan contractually provided for allowance for offset against the benefits payable under the disability plan when workers' compensation benefits are also received by the claimant.

The ALJ, in an Opinion and Award rendered November 20, 1990, found Mullins 100 percent occupationally disabled as a result of a May 4, 1987 work-related back injury. In the award, 52 percent of the liability was assessed against Eastern, 28 percent against the Special Fund, and 20 percent was found non-compensable due to prior active disability from a previous back injury claim subsequently settled in a lump sum based upon 20 percent occupational disability. In addition, the ALJ determined that Mullins suffered a 40 percent occupational disability due to coal workers' pneumoconiosis. The combined occupational disabilities resulted in Mullins' entitlement to lifetime benefits.

In the evidence adduced before the ALJ, it was shown that Mullins received his full salary for three months following his injury and then had received $892.23 per month under the "Pension–Retirement Plan" provided at the cost of Eastern. A copy of the plan was admitted into evidence. Its terms describe the amount of benefits and factors utilized in calculating the rate of benefits. The plan, in pertinent part, provided:

If you are receiving a disability retirement benefit from this Plan and are also receiving:

\* \* \* \* \* \*

b) Social Security disability benefits and/or Workers' Compensation (including Black Lung or similar occupational disability benefits)—your benefit from this Plan will be reduced to the extent that your combined income exceeds 85% of your Average Salary. The por-

tion of any such reduction which is attributable to Social Security disability benefits, however, will not exceed 50% of such benefit.

Gary Clatterbuck, a claims supervisor for Eastern, testified as to the plan and as to Mullins' employee benefits program. Clatterbuck testified that under a "Disability Income Benefits" provision which Mullins had elected to participate in, Mullins would receive a salary continuation for three months and thereafter the sum of $225.00 per week for the first year and $140.00 per week thereafter up to a period of four years.

In his original Opinion and Award, the ALJ, after reviewing the testimony of Gary Clatterbuck, and pursuant to *Beth–Elkhorn Corporation v. Lucas*, Ky. App., 670 S.W.2d 480 (1983); *General Electric Co. v. Morris*, Ky., 670 S.W.2d 854 (1984); and *Copher v. American Standard*, Ky.App., 732 S.W.2d 508 (1987), allowed offset credit to Eastern for the disability benefits, including salary continuation, as paid to Mullins under the "Plan".

Eastern, Mullins, and the Special Fund each filed petitions for reconsideration. The ALJ, in an Order dated January 23, 1991, overruled the petitions filed by Eastern and the Special Fund. In that same Order, the ALJ sustained the petition filed by Mullins, and amended his Opinion and Award as follows:

29. The testimony of Gary Clatterbuck, a claims representative for the defendant-employer, established that under a disability income plan plaintiff received his full salary for a period of three months subsequent to the injury; that under the same plan plaintiff received weekly benefits ($225.00 per week according to the documentation entered into evidence at hearing) for an additional period of time; that since October 1, 1988, plaintiff has been receiving benefits at the rate of $892.23 per month under a disability pension plan; and that all such benefits were paid under a plan or program provided by the defendant-employer at no cost to plaintiff. Consequently the defen-

dant-employer requested that it be granted an appropriate credit against any workers' compensation benefits awarded herein.

A review of the documentation submitted at hearing indicated that the disability income plan, insofar as it pertains to the weekly benefits payable subsequent to the three-month period of salary continuation, and the disability pension plan contained provisions that allow for an offset against the benefits payable under those plans when workers' compensation benefits are also payable to plaintiff. Therefore, with the exception of the three-month period of salary continuation, the defendant-employer has contractually agreed to take its credit or offset against the benefits payable under the plans rather than against an award of workers' compensation benefits. Consequently the credit or offset to which the defendant-employer is entitled is limited to the three-month period of salary continuation.

8. The defendant-employer shall take credit on a dollar-for-dollar basis against the award made herein for the continuation of plaintiff's full salary during the initial three months of his disability.

On appeal, Eastern claims entitlement to credit for the disability plan payments under the authority of *South Central Bell Telephone v. George*, Ky.App., 619 S.W.2d 723 (1981); *Beth–Elkhorn Corporation v. Lucas, supra;* and *Copher v. American Standard Company, supra.* In *George*, the claimant had received an award of permanent total disability, apportioned evenly between his employer and the Special Fund. Thereunder, the employer's liability was $96.00 per week. For one year during the compensable period, the employer had paid the claimant $289.00 per week under a pension and disability plan, which provided for an offset of any amounts awarded under workers' compensation. In a civil action to enforce the compensation award, the circuit court held that payments made pursuant to the disability plan were properly credited against the employer's compensation liability on a week-for-week basis. The employer appealed, seeking additional *prospective* credit for the amount of disability payments in excess of the compensation awarded. The Court of Appeals affirmed the trial court stating:

> We affirm the judgment of the trial court which granted credit for that portion of the payments under the Plan which represented the employer's liability under the Workers' Compensation schedule.
>
> According to the Board's order, credit was to be allowed for any 'compensation' heretofore paid. Construing this language together with the provision of the Plan which provided for integration of benefits with Workers' Compensation, we conclude that of the $289 per week paid to the employee only $96 per week would be considered 'compensation' and the balance must be considered as sickness disability benefits pursuant to the Plan.

(at p. 725).

*Beth–Elkhorn Corporation v. Lucas, supra,* extended the holding in *George, supra,* to disability plans which contained no provision for offset of workers' compensation benefits, stating: "We deem it important the fact that the employer herein provided these additional disability benefits at no apparent cost to the employee." (670 S.W.2d at p. 482).

In arguing that the above case law applies to the facts at hand, Eastern contends that the factors upon which the above cases were determined are present in this case, and those factors allowing entitlement to credit are as follows: (1) the plan is fully funded and paid for by the employer and (2) the disability pension payments are made by the employer by reason of the plaintiff's injury and resulting disability which arise from his employment as opposed to some nonrelated reason. Eastern further cites Clatterbuck's testimony to show that Mullins is receiving social security disability, as well as his disability pension plan paid by

Eastern, and that he has been receiving these benefits since October 1, 1988. Eastern argues that the 85 percent limit, as found in the plan, applies only to a combination of benefits as it relates to Mullins' salary prior to becoming disabled as being a maximum cap on what he can receive and does not provide for an offset of only workers' compensation benefits as permitted by what it believes is the applicable case law.

In response, Mullins raises several well reasoned arguments. He first argues that the pension plan in question contains its own offset provisions. He contends that Eastern should not receive credit where there is a specific provision in the contract for the employer to receive its own credit or repayment if various other benefits are awarded which exceed 85 percent of the employee's average salary. Mullins contends that if Eastern is allowed to credit the pension plan benefits against workers' compensation benefits, and then is entitled to offset the pension plan by the receipt of workers' compensation benefits, he would end up with less money than if he had not filed a workers' compensation claim. He additionally argues that the benefits received from the pension plan are fully taxable, while benefits received from workers' compensation are not taxable.

Mullins also argues that while the plan is funded by Eastern, it is not provided at no cost to the employee. He points out that as a salaried employee, he had to invest 10 years of his work life with Eastern to become vested and eligible. He further submits that there has been no showing that the disability pension payments are being made by Eastern solely for the reason of his work-related injury and resulting disability, as opposed to some nonrelated reason. This argument is based on the contention that a worker is eligible for social security disability benefits on factors that may not include work-relatedness. Mullins also compares the Disability Income Benefit Plan to the Disability Pension Plan. The former contains a clear offset provision which includes any benefits from workers' compensation and/or social security and/or the Pension Retirement Plan. He contends that the benefits received under the Pension Retirement Plan are only offset to the extent that they exceed 85 percent of his average salary.

The ALJ concluded that with the exception of the three month period of the salary continuation, that Eastern had contractually agreed to take its credit or offset against the benefits payable under the plans rather than against the workers' compensation benefits and therefore denied Eastern credit. Of significance is Mullins' contention that there is no Kentucky authority for specifically allowing credit for payment under vested disability pension against a workers' compensation award, or authority which allows credit for payments under a disability pension plan against a workers' compensation award when the disability pension plan contains its own offset provisions which are inconsistent with such credit.

The arguments made by Mullins are compelling. Here, the plan in dispute contractually provides for the workers' compensation benefits to be offset against the plan benefits. The facts, as found, and the reasons set forth by the ALJ, are supported by the evidence in the record. Justice and logic is better served here by the ALJ's award of the statutory benefits to Mullins, and allowing the plan benefits to terminate by its own offset terms. We thus find no error in the ALJ's denial of credit under the circumstances of this claim.

Accordingly, the Opinion and Award rendered November 20, 1990, as amended by the Order of January 23, 1991, by Hon. Richard H. Campbell Jr., Administrative Law Judge, is hereby AFFIRMED, and the appeal by Eastern Coal Corporation is hereby DISMISSED.

For the foregoing reasons, the opinion of the Workers' Compensation Board is affirmed.

All concur.