**Ruby SAYLOR, Plaintiff–Appellant,**

**v.**

**PARKER SEAL COMPANY and Commonwealth of Kentucky, Department of Workers' Claims, Defendants–Appellees.**

**No. 91–5735.**

United States Court of Appeals, Sixth Circuit.

Argued March 20, 1992.

Decided Sept. 14, 1992.

Jackie Aubrey (argued and briefed), Walker, Emmons, Shannon & Aubrey, Richmond, Ky., for plaintiff-appellant.

---

P. Douglas Barr (argued and briefed), Melissa A. Stewart, Stoll, Keenon & Park, Lexington, Ky., Valerie L. Salven (briefed), General Counsel, Dept. of Workers' Claims, Frankfort, Ky., for defendants-appellees.

Before: JONES and NORRIS, Circuit Judges; and JOINER, Senior District Judge.*

NATHANIEL R. JONES, Circuit Judge.

Plaintiff, Ruby Saylor, appeals the district court's order dismissing her ERISA action for failure to state a claim. For the reasons that follow, we affirm.

I

Saylor was employed by the defendant, Parker Seal Company ("Parker"), for twenty-two years. During her employment with Parker, Saylor was covered by an employee benefit plan entitled "Hourly–Wage Employees Pension Plan" ("Plan"). This Plan was maintained as the result of a collective bargaining agreement. The Plan provides, in relevant part, as follows:

> 6.1 *Eligibility.* Each Employee who retires from employment with the Employer due to permanent and total disability and who has completed at least ten years of service shall be eligible for a monthly disability retirement benefit....
>
> ....
>
> 6.3 *Payment....* [N]o disability retirement benefit hereunder shall commence prior to the cessation of any accident or sickness benefit payments which an Employee retired because of permanent and total disability is entitled to receive for such disability under any insurance policy or programs or under any state or local legislation providing for benefits to permanently and totally disabled persons (except under the federal Social Security Act and under any Workers' Compensation law or occupational disease law) which are allocable to taxes, premiums, or other payments made by the Employer therefor.

J.A. at 27–29. When Saylor became disabled, she applied for and received disability benefits under the Plan.

Saylor also filed a claim with the Kentucky Department of Workers' Claims ("Department") for workers' compensation under Kentucky law, contending that her disability was the result of a work-related injury. The Department, also a defendant in this action, found that Saylor was totally disabled, but only forty percent due to the work-related injury, and awarded her occupational disability benefits based on that percentage. The Department, however, allowed Parker to offset the amount of workers' compensation payments it paid to Saylor by the amount she received in disability pension benefits under the Plan. Kentucky courts have allowed the Department to credit employers for any "compensation" paid prior entry of a workers' compensation awards, including compensation consisting of benefits paid under an employer-funded disability plan. *See South Cent. Bell Tel. Co. v. George,* 619 S.W.2d 723, 725 (Ky.Ct.App.1981); *Beth–Elkhorn Corp. v. Lucas,* 670 S.W.2d 480, 482 (Ky. Ct.App.1983) (noting that employer largess provides the plan benefits in the first place); *cf. General Elec. Co. v. Morris,* 670 S.W.2d 854, 856 (1984) (allowing weekly credit, for amounts not exceeding the amount of workers' compensation due, where employer made voluntary payments that were *not* from an ERISA employee benefits plan).

Saylor filed a complaint in district court, seeking a determination that (1) the offset practice employed in her case violates the preemption provision of the Employee Retirement Income Security Act of 1974 ("ERISA" or the "Act"), 29 U.S.C. § 1144 (1988) (amended 1989), (2) the practice allows Plan benefits to inure to the benefit of the employer in violation of 29 U.S.C. § 1103 (1988) (amended 1990), and (3) both of these alleged statutory violations contravene the terms of the Plan as well.

---

* Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

Parker filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, which the district court granted on May 29, 1991, holding as follows: "Under Kentucky common law, the [Department] reduces workers' compensation awards when an employee receives benefits under a [sic] employer-funded plan. ERISA does not preempt the law because it does not 'relate to' Saylor's benefit plan. Saylor's allegations, therefore, do not implicate ERISA." J.A. at 110 (citations omitted). The district court concluded that, insofar as Saylor's only claim was that the offset violated ERISA, Saylor's complaint must be dismissed for failure to state a claim upon which relief can be granted. This appeal followed.

## II

Whether the district court properly dismissed the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is a question of law subject to de novo review. *Dugan v. Brooks*, 818 F.2d 513, 516 (6th Cir. 1987). The factual allegations of the complaint must be accepted as true, *Kerasotes Mich. Theatres v. National Amusements*, 854 F.2d 135, 136 (6th Cir.1988), *cert. dismissed*, 490 U.S. 1087, 109 S.Ct. 2461, 104 L.Ed.2d 982 (1989), and construed in the light most favorable to the plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

Two specific ERISA provisions are relevant to Saylor's appeal. First, 29 U.S.C. § 1144(a) governs the relationship between ERISA provisions and related state provisions: "[T]he provisions of this subchapter and subchapter III of this chapter shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a) (1988) (amended 1989). Second, Congress has determined that "[e]xcept as

provided [in certain sections of ERISA], the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1) (1988) (amended 1990).

Thus, the question of whether the district court properly dismissed Saylor's action for failure to state a claim under Rule 12(b)(6) contains two issues. The first issue we address is whether the Kentucky common law allowing employers to offset workers' compensation payments against ERISA plan benefits is preempted by the Act. If not, we then must consider whether the Kentucky common law operates to cause the assets of the Plan to inure to Parker's benefit in violation of the Act.

## A

There are several cases from both the Supreme Court and this circuit that address whether ERISA preempts the Kentucky common law practice of offsetting, as stated in *South Central Bell Telephone Co. v. George*, 619 S.W.2d 723, 724 (Ky.Ct. App.1981) and *Beth–Elkhorn Corp. v. Lucas*, 670 S.W.2d 480, 482 (Ky.Ct.App.1983). The leading case on this issue is *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). In *Alessi*, the Supreme Court considered a New Jersey law that prohibited the very arrangement that Kentucky law invites in the instant case. The Court identified an important, recurring practice in calculating benefits, called "integration," "under which benefit levels are determined by combining pension funds with other income streams available to the retired employees." *Id.* at 514, 101 S.Ct. at 1901. Whereas Saylor complains of the Kentucky law that allows for integration, the plaintiff in *Alessi* complained of a law New Jersey had enacted *prohibiting* the practice. *Id.* at 509, 101 S.Ct. at 1899. Rejecting the argument that the law only indirectly "related to" employee benefits plans, the Supreme Court held that the New Jersey law was preempted by

§ 1144(a) of the Act. *See id.* The Court noted that "Congress did not prohibit 'integration,'" *id.* at 514, 101 S.Ct. at 1901, and reasoned that the New Jersey law therefore eliminated one legitimate method of administering an employee benefits plan, *see id.* at 525, 101 S.Ct. at 1907. Such state prerogatives, the Court concluded, could cause the very type of administrative headache that the ERISA preemption statute was designed to prevent. *See id.*

The Court's opinion in *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), expanded on the uniformity-of-administration aspect of the *Alessi* decision. Focusing again on Congress's purpose in enacting ERISA's preemption provision, the Court noted that the field of employee benefits plans was to be swept clear of all but federal regulations, " 'thus eliminating the threat of conflicting or inconsistent State and local regulation.'" *Id.* at 9 (quoting 120 Cong.Rec. 29,933 (1974) (statement of Sen. Williams). The Court recognized that employers who undertake to administer employee benefits plans accept a host of related duties, such as "determining the eligibility of claimants, calculating benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appropriate records in order to comply with applicable reporting requirements." *Id.* For an employer to have to perform these duties differently in each state in which he maintains a plan would be a great disincentive to maintaining one. As the Court stated, "[f]aced with the difficulty or impossibility of structuring administrative practices according to a set of uniform guidelines, an employer may decide to reduce benefits or simply not to pay them at all." *Id.* at 13. Under this reasoning, the Court held that ERISA did not preempt the Maine law at issue in *Fort Halifax,* in that its required, "one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation." *Id.* at 12.

This circuit also has previously faced this question. In *Kapuscinski v. Plan Administrator,* 658 F.2d 427 (6th Cir.1981), the court considered the possible preemption of a Michigan law that required an employer to seek reimbursements from a specific state-operated fund, instead of seeking offsets against the pension plan benefits as allowed by the plan itself. Following the Supreme Court's guidance in *Alessi,* this court found that, "to the extent that the Michigan statute is construed to inhibit setoffs pursuant to a pension plan governed by ERISA," it is preempted. *Id.* at 430. The court noted the *Alessi* Court's finding that " 'ERISA makes clear that even indirect state action bearing on private pensions may encroach upon the area of exclusive federal concern.'" *Id.* (quoting *Alessi,* 451 U.S. at 525, 101 S.Ct. at 1907).

In *Firestone Tire & Rubber Co. v. Neusser,* 810 F.2d 550 (6th Cir.1987), this circuit isolated three factors to consider in making the determination called for in the instant case: (1) "whether the state law represents a traditional exercise of state authority," *id.* at 555; (2) whether the " 'state law ... affects relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries,'" which would be troublesome, or if, rather, the law affects " 'relations between one of these entities and an outside party, or between two outside parties with only an incidental effect on the plan," *id.* at 556 (quoting *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters.,* 793 F.2d 1456, 1467 (5th Cir.1986)); or (3) whether the effect of the state law on the ERISA plan is merely incidental in nature, *id.* at 556. Examining an Akron, Ohio city income-tax ordinance in light of these factors, this court found that the ordinance had an effect on benefits plans too indirect and incidental in nature to be preempted by ERISA, especially given that "historically, taxation has been considered an attribute of state sovereignty." *Id.* at 555.

Under the rationale set forth in the above cases, we find that ERISA does not preempt the Kentucky common law allowing offsets of workers' compensation payments against employee benefits plan payments. As established in *Alessi,* integration involving employee benefits plans,

of the type conceived of by the Department and the Kentucky courts, is legitimate. Although the Plan in the instant case does not specifically provide for integration itself, it does not, as Saylor would have us believe, prohibit the practice. She relies on Plan provision 6.1—concerning eligibility—quoted *supra,* to support her argument that the Plan forbids integration. That provision, however, merely describes the commencement of plan benefits payments in relation to the payment of other benefits. *See* J.A. at 29. It provides, inter alia, that a covered employee may begin to receive Plan benefits even while receiving benefits under workers' compensation laws. The Plan does not *require* that the full amount of both benefits be paid simultaneously, as Saylor argues; it does not, because it cannot. Parker, of course, has no control over the amount of workers' compensation benefits approved by the Department. Likewise, the reduction in workers' compensation benefits which obtains under the Kentucky law in no way affects the administration of Parker's Plan. In fact, the Kentucky law likely operates as an incentive for Parker to maintain such a plan, in that otherwise, Parker would be financing "double recovery" for people in Saylor's position, a situation which might induce or force Parker to cancel its Plan. *See Fort Halifax,* 482 U.S. at 13, 107 S.Ct. at 2218.

A consideration of the three *Firestone* factors supports this conclusion. First, workers' compensation is clearly one of the state's traditional areas of authority. If Kentucky wants to reduce the workers' compensation payments of an employee who is also covered for disability under her employer's plan, it is not prevented from doing so by ERISA. Second, Kentucky law simply seeks to credit employers for voluntary payments to employees which substitute for workers' compensation, whenever workers' compensation is subsequently awarded; the law applies whether or not the voluntary payments are made through an ERISA plan. Thus, although the law may be seen as having an effect, generally, upon Plan beneficiaries, it affects them "in their capacity as employees, without regard to their status as participants in an ERISA plan." *Firestone,* 810 F.2d at 556. Third, any effect on Parker's plan is incidental. As stressed by Parker, the payments that are reduced are the *workers' compensation payments.* There is no effect on the calculation of benefits under the Plan, except perhaps that Parker's employees as a group might profit from a higher pension level, where Parker takes into account the offsets it is allowed. *See Alessi,* 451 U.S. at 514, 101 S.Ct. at 1901. We therefore find that Kentucky law is not preempted by the Act.

**B**

■ The second issue is concerned with whether the Plan violates the Act because Kentucky law causes Plan assets to inure to Parker's benefit. *See* 29 U.S.C. § 1103(c)(1) (1988) (amended 1990). Saylor argues that, because Parker is credited a portion of her workers' compensation award, it is not paying her as much money as it would be if Kentucky law did not provide for such credits. Therefore, she argues, the money Parker has "saved" inures to its benefit.

Saylor's argument is without merit. The issue under ERISA is not whether Parker benefits from any payment arrangement, but whether Plan assets are being used to benefit Parker rather than the Plan participants. As we concluded in the first part of this opinion, Kentucky law has no effect on the Plan. The Plan benefits are calculated and paid to Saylor in the same manner and amount as they would be had she not qualified for workers' compensation. Parker is merely spared by the Department from having to make a workers' compensation payment that duplicates the benefit Parker is already providing, at its own expense, under the Plan. Thus the *assets of the Plan* are not redirected—to Parker's benefit or anyone else's—under the operation of Kentucky law.

**III**

The district court's order dismissing Saylor's complaint for failure to state a claim

upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), is AFFIRMED.

JOINER, Senior District Judge, dissenting.

In this case we are asked whether the unmistakably broad preemption clause of ERISA obviates a Kentucky common law principle allowing integration of benefits payable under an ERISA-covered disability benefits plan and benefits paid under the Kentucky workers' compensation system. In order for the ERISA preemption clause to apply, the state law—whether statutory or other—need only be found to "relate to" the ERISA-covered plan. 29 U.S.C. § 1144(a) (as amended 1989); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). The majority opinion concludes that the state common law principle at issue cannot be said to "relate to" plaintiff's ERISA-covered plan because, notwithstanding the integration of benefits sanctioned by the common law, the benefits paid plaintiff under the plan "are calculated and paid to Saylor in the same manner and amount as they would be had she not qualified for workers' compensation." I believe that the majority opinion fails to give effect to the preemption clause by narrowly focusing upon the benefits paid to plaintiff through the plan as though the plan exists in a vacuum. The terms of the plan reveal that such a conclusion is at odds with the well-documented Congressional intent to create a "deliberately expansive" preemption clause "designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life Ins. Co.*, 481 U.S. at 45, 107 S.Ct. at 1552 (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981)). Therefore, I dissent and would hold that the Kentucky common law principle permitting integration is preempted by § 1144(a) of ERISA.

The legislative history leaves no room to doubt the extraordinarily broad scope of ERISA. In *Pilot Life Ins. Co.*, the Court recognized that "House and Senate sponsors emphasized both the breadth and importance of the pre-emption provisions," and quoted Senator Williams:

> It should be stressed that with the narrow exceptions specified in the bill, the substantive and enforcement provisions of the conference substitute are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans. This principle is intended to apply in its broadest sense to all actions of State or local governments, or any instrumentality thereof, which have the force or effect of law.

481 U.S. at 46, 107 S.Ct. at 1552 (quoting 120 Cong.Rec. [29197, 29933] (1974)). Determining how to apply the "relate to" language of the preemption clause in keeping with the intended broad sweep of that clause, the Court turned to its earlier pronouncement in *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983), that "[t]he phrase 'relate to' was given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Pilot Life Ins. Co.*, 481 U.S. at 47, 107 S.Ct. at 1553 (quoting *Shaw*).

I read the language "connection with or reference to" as directing the courts to find a state law subject to the preemption clause if that law has any link with—any intended or even incidental effect upon—the administration of the ERISA-covered plan. In the instant case, I believe the necessary link between the common law principle and the plan is apparent upon comparison of the terms of the plan with the effect of integration of benefits:

> 6.3 *Payment* ... [N]o disability retirement benefit hereunder shall commence prior to the cessation of any accident or sickness benefit payments which an Employee retired because of permanent and total disability is entitled to receive for such disability under any insurance policy or programs or under any state or local legislation providing for benefits to permanently and totally dis-

abled persons (except under the federal Social Security Act and under any Workers' Compensation law or occupational disease law) which are allocable to taxes, premiums, or other payments made by the Employer therefor.

The plan states that the disabled retired employee is not to receive income from more than one source at the employer's expense, *except* in the form of social security and workers' compensation benefits. In other words, when a plan beneficiary simultaneously meets the requirements for entitlement to plan benefits and workers' compensation benefits, that beneficiary shall, under the terms of the ERISA-covered plan, receive both. Thus, when plaintiff became a plan beneficiary, the plan coverage was understood by the parties to preclude "double payment" by the employer in most cases but not in the case at bar. Here, the plan directs that plaintiff shall be compensated by both revenue streams, each undiminished by the other. That total sum constitutes the plan benefits. The Kentucky common law principle permitting integration of plaintiff's plan benefits with her workers' compensation entitlement results in plaintiff receiving revenue less than that specifically guaranteed to her by the terms of the plan. This result, in my view, demonstrates that the state law is connected to, indeed has a direct impact upon, the benefits conferred upon plaintiff under the terms of the ERISA-covered plan. Thus, in permitting integration of benefits, the Kentucky courts have created a common law rule which relates to the ERISA-covered plan of which plaintiff is a beneficiary.

Simply stated, the plan contains an express provision regarding payments to beneficiaries which implies that the plan benefits and workers' compensation benefits cannot be integrated. State law proscribes this, taking away the right of the parties to the plan to determine what, if any, impact additional entitlements may have upon the plan. Both *Alessi*, and *Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550 (6th Cir.1987), require us to hold such a direct state law limitation upon administration of the ERISA-covered plan to be preempted by section 1144(a). I would reverse.