**Jess P. WILLIAMS, Appellant,**

v.

**EASTERN COAL CORPORATION; Vicki G. Newberg, Acting Director of Special Fund; Honorable Donna H. Terry, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

**EASTERN COAL CORPORATION, Appellant,**

v.

**Jess P. WILLIAMS, William O. Windchy, Acting Director of Special Fund; Donna H. Terry, Administrative Law Judge; and Workers' Compensation Board, Appellants.**

Nos. 96–SC–287–WC, 96–SC–332–WC.

Supreme Court of Kentucky.

Oct. 2, 1997.

William J. Baird, III, Baird, Baird, Baird & Jones, Pikeville, Terri Smith Walters, Pikeville, for Eastern Coal Corporation.

Mark C. Webster, Labor Cabinet, Division of Special Fund, Louisville, for Special Fund.

Robert J. Greene, Kelsey E. Friend Law Firm, Pikeville, for Jess P. Williams.

GRAVES, Justice.

## I. PROCEDURAL HISTORY

This matter concerns the allowance of offsets when a worker receives both workers' compensation benefits and disability or retirement benefits paid pursuant to an employer-funded plan.

Appellant, Jess P. Williams (hereinafter "Williams"), and Appellee, Eastern Coal Corporation (hereinafter "Eastern"), had elected coverage under the Kentucky Workers' Compensation Act when Williams received a disabling work-related injury on August 24, 1991. The Administrative Law Judge (ALJ) determined that Williams was totally, occupationally disabled, apportioning a 45% disability to the employer, a 45% disability to the Special Fund, and a 10% disability to a noncompensable, pre-existing anxiety and panic disorder. The ALJ also determined that he was paid temporary total disability benefits from August 25, 1991, through December 30, 1991. Furthermore, Williams received salary continuation benefits during the three months following the injury. Pursuant to the terms of the plan, full salary continuation benefits were subject to an offset for workers' compensation benefits received. That offset was taken and is no longer in dispute.

On September 1, 1992, Williams was found totally disabled under the social security laws and began receiving social security disability benefits. As a consequence of qualifying for social security benefits, Williams also qualified for a disability retirement benefit under a separate, employer-funded plan for those workers with ten years' seniority who become totally disabled before the normal retirement age of 65. Under the disability retirement plan, normal retirement is age 65. However, disability retirement benefits are available to younger workers who have met a ten year vesting requirement and are eligible for social security disability. The plan essentially allows Williams to receive pension payments to which he would not otherwise be entitled until reaching the normal retirement age of 65. However, the plan stipulates that Williams is only entitled to receive such benefits so long as he remains disabled and qualifies for benefits under the social security laws. Although the plan provides for a reduction in benefits if the combination of social security and plan disability benefits exceeds the worker's pre-disability wage, the terms of the disability retirement plan do not provide for an offset of plan benefits if the worker also receives workers' compensation benefits.

Eastern seeks credit for payments paid pursuant to the employer-funded disability retirement plan against its workers' compensation liability since both the disability and workers' compensation benefits arose from the same injury. The specific issues on appeal include: 1) whether Eastern is entitled to credit against its past due workers' compensation liability for payments already made pursuant to its disability pension plan; 2) whether Eastern is entitled to prospective credit against its workers' compensation liability for post-award payments under the disability pension plan; and 3) whether ERISA precludes credit to Eastern since Williams was vested in the disability retirement plan.

The Administrative Law Judge, Workers' Compensation Board, and Court of Appeals have all agreed that, although a credit against past due workers' compensation liability was appropriate, Eastern had failed to demonstrate that a credit for future disability benefits was authorized. Since disability benefits could cease or be reduced in the future under circumstances which would not affect the payment of workers' compensation benefits, Eastern's assertion that plan benefits would duplicate workers' compensation was characterized as "speculative" by the Board and the Court of Appeals. The Court of Appeals did not address Eastern's argument that the award could be reopened and amended if plan benefits were reduced or terminated. Williams's argument that the disability benefits were vested retirement benefits (rather than disability benefits paid in lieu of workers' compensation) and that their offset was barred by ERISA was rejected, based on the authority of *Saylor v. Parker Seal Co.*, 975 F.2d 252 (6th Cir.1992),

which held that ERISA did not preempt Kentucky common law allowing an offset of workers' compensation payments against employee benefit plans. *Id.* at 255.

After hearing oral argument and reviewing the record, we conclude that Eastern is not allowed credit against its past due workers' compensation liability for payments already made pursuant to its disability pension plan. Furthermore, Eastern is not entitled to a prospective credit. In view of the foregoing, it is unnecessary to address whether ERISA precludes a retroactive credit.

## II. DEFINITIONS

Workers' compensation is but one part of an overall system of wage-loss protection, the purpose of which is to be certain that income is available to provide the necessities of life for those affected by physical disability, economic unemployment, or old age. Unemployment compensation, Social Security, state pension and disability systems, as well as private pension and insurance plans are also part of the wage-loss system. Since all of these statutory programs and private plans are based upon a common principle of wage-loss protection, planning for the coordination or integration of benefits is essential in order to avoid an unnecessary and costly duplication of benefits. According to Professor Larson, avoiding a duplication of benefits is also sound public policy so that it does not become more profitable for an individual to become a beneficiary of various wage-loss programs than to be employed. Larson, *The Law of Workmens' Compensation*, § 97.51.

■■■■ However in Kentucky, there is neither a legal basis nor a policy reason for allowing credit against any portion of this award. Workers' compensation is a creature of statute, and the remedies and procedures described therein are exclusive. *Morrison v. Carbide and Carbon Chemicals Corp.*, 278 Ky. 746, 129 S.W.2d 547, 549 (1939). When an employer and employee submit themselves to the provisions of the act, their rights and liabilities are henceforth to be

measured by the terms of the act. *Id.* at 550. A right created by statute cannot be defeated by the application of a common law principle. *Eversole v. Eversole*, 169 Ky. 793, 185 S.W. 487, 488 (1916). Thus, any analysis of a workers' compensation issue is necessarily an exercise in statutory interpretation.

Workers' compensation law in Kentucky consists of a statutory system which seeks to compensate an injured worker or the worker's dependents for economic loss sustained as a result of the worker's injury or death within the course and scope of employment. The economic loss which the system seeks to compensate consists of lost earnings or earning capacity, medical expenses, and rehabilitation expenses. Lost earnings (in the case of temporary total disability) and lost earning capacity (in the case of permanent disability) are only partially compensated in the form of "income benefits" which are calculated as a percentage of the worker's average weekly wage. Occupational disability is defined as:

> [A] decrease of wage earning capacity due to injury or loss of ability to compete to obtain the kind of work the employee is customarily able to do, in the area where he lives, taking into consideration his age, occupation, education, effect upon employee's general health of continuing in the kind of work he is customarily able to do, and impairment or disfigurement.

(KRS 342.0011(11); *Osborne v. Johnson*, Ky., 432 S.W.2d 800 (1968). Workers' compensation benefits are payable only for that portion of the worker's occupational disability which results from the work-related injury. Prior, active and nonwork-related disabilities are not compensable.

Our workers' compensation act mandates an award of income benefits to a worker who suffers death or occupational disability as a result of a work-related accident or occupational disease. KRS 342.730; KRS 342.750. At the time of Williams's injury, there was no provision in the act permitting a reduction of that award simply because he was also eligible for benefits from a collateral source.[1]

---

**1.** KRS 342.730(5) and (6), effective December 12, 1996, Ky. Acts, 1996 (1st Ex.Sess.), ch. 1, § 30, permits offsets for both unemployment insurance benefits and exclusively employer-funded disability or sickness and accident plans providing benefits duplicative of workers' compensation benefits, unless the plan specifically provides otherwise. Those statutes do not af-

There was formerly a provision in the act which allowed a credit against the award for payments made or supplies furnished by the employer in excess of those required by the act, *i.e.*, as a result of the employer's largess. KRS 342.145. That provision was repealed effective January 1, 1973. Ky. Acts 1972, ch. 78, § 36.

Congress has defined the term "disability" for the regular social security disability program as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual:

shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A) and § 1382c(a)(3)(B).

Unlike workers' compensation awards, social security disability awards do not take into account the cause of the affected individual's disability or exclude certain portions of the individual's disability as noncompensable. They are payable only for so long as the individual remains totally disabled under the social security standard. Furthermore, social security benefits are offset if the recipient's combined workers' compensation and social security benefits exceed a certain threshold. 42 U.S.C. § 424a(a)–(d).

Even though case law and public policy may not favor double compensation for the same disability, Williams is the qualified beneficiary of both statutory benefits under workers' compensation and contractual benefits under the disability pension plan because he also has qualified for social security disability benefits. Workers' compensation benefits are provided by law and qualification therefore is defined by Kentucky Revised Statutes. Whereas, the disability pension benefits are contingent upon eligibility for social security disability benefits, which are defined by the United States Code. As is apparent from the different standards for qualification and the offset contained in the formula for computing an individual's social security entitlement, workers' compensation and social security are separate, complementary plans for disability which are provided and operated by different governmental agencies with differing goals and objectives. The definition of disability for the purposes of social security may be changed by Congress or Williams may fail to continue to meet the disability requirements of the present statute. Hence, his eligibility for private pension benefits may change under conditions which would not affect his entitlement to the workers' compensation award.

## III. CREDITS

Virtually every workers' compensation award contains standard language awarding the employer "credit for any payments of compensation heretofore paid." "Compensation" means income benefits and medical payments made pursuant to the provisions of the workers' compensation act. KRS 342.0011(14). Thus, credit against an award has always been allowed for voluntary payments of workers' compensation income benefits paid prior to the rendition of the award. *E.g., Western Casualty and Surety Co. v. Adkins,* Ky.App., 619 S.W.2d 502 (1981); *Cottrell v. Alton Box Board Co.,* Ky.App., 510

fect the outcome of claims arising before their effective date. KRS 342.0015; *General Electric Corp. v. Morris,* Ky., 670 S.W.2d 854 (1984).

S.W.2d 19 (1974); *American Radiator & Standard Sanitary Corp. v. Crawford*, 310 Ky. 711, 221 S.W.2d 684 (1949). This simply recognizes that the employer has pre-paid a portion of the benefits subsequently awarded to the injured worker, and that otherwise there would be a disincentive for the employer to voluntarily provide benefits needed by the employee during the pendency of the litigation. (Often, the only issue being litigated is the apportionment of the award between the employer and the Special Fund.) The only debate in this regard has been whether the credit should be allowed on a dollar-for-dollar basis or only on a week-for-week basis. *E.g., Triangle Insulation and Sheet Metal Co. v. Stratemeyer*, Ky., 782 S.W.2d 628 (1990); *General Electric Corp. v. Morris*, Ky., 670 S.W.2d 854 (1984).

Most employers provide benefit packages for their employees in addition to the statutorily mandated workers' compensation coverage, some of which, especially medical and hospitalization plans, are duplicative of workers' compensation benefits. *See Pierce v. Russell Sportswear Corp.*, Ky.App., 586 S.W.2d 301 (1979), which held that an employer was not relieved of payment of medical bills under KRS 342.020(1) merely because the same bills had already been paid by another insurer, absent evidence that the payor retained a right of subrogation which could subject the employer to double payment. Other examples include sickness and accident disability plans, *e.g., South Central Bell Telephone Co. v. George*, Ky.App., 619 S.W.2d 723 (1981), salary continuation plans, *e.g., Beth–Elkhorn Corp. v. Lucas*, Ky.App., 670 S.W.2d 480 (1983), short term disability plans, *e.g., Gatliff Coal Co. v. Evans*, Ky., 896 S.W.2d 608 (1995), and, as here, long-term disability retirement pension plans, *e.g., GAF Corporation v. Barnes, supra; American Standard v. Boyd*, Ky., 873 S.W.2d 822 (1994). Many such plans contain provisions which "integrate" their benefits with workers' compensation benefits, *i.e.*, the pension plan benefits are offset to the extent that they are duplicated by workers' compensation benefits. *E.g., Whayne Supply Co. v. Dugger*, Ky.App., 918 S.W.2d 234 (1996); *Gatliff Coal Co. v. Evans, supra; Eastern Coal Corp. v. Mullins*, Ky.App., 845 S.W.2d 27 (1993). As a result of these contractual provisions, the workers' compensation payments are credited against the pension benefits, but not vice versa. *South Central Bell Telephone Co. v. George, supra.*

Prior to 1996, only one case had held that payments made pursuant to an employee benefit plan could be credited against workers' compensation benefits. In *Beth–Elkhorn Corp. v. Lucas, supra*, the salary continuation plan paid Lucas his full salary during his absence from work. Finding it determinative that the plan was fully funded by the employer, the Court of Appeals held that "Beth Elkhorn is entitled to benefit from its own generosity." *Id.* at 482. In addition to being an oxymoron, this statement was unsupported by any then-existing provision of KRS chapter 342. Nor is there any statutory support for the *dicta* we proclaimed in *American Standard v. Boyd, supra*, and repeated in *GAF Corporation v. Barnes*, Ky., 906 S.W.2d 353 (1995), that credit should be allowed against workers' compensation benefits to the extent that they are duplicative of benefits provided by another noncontributory benefit package provided by the employer.[2] In *Conkwright v. Rockwell International*, Ky.App., 920 S.W.2d 90 (1996), the Court of Appeals reluctantly followed this *dicta* and allowed such a credit. Two of the three judges on that panel wrote separate concurring opinions imploring us to rethink this issue.

Presumably, employers have their own motivations for providing "largess" for their employees. No one claims that workers' compensation benefits are intended to fully compensate an employee for the loss of his ability to labor and earn money.[3] If a gener-

---

**2.** The origin of this theory appears to have been attributed to Professor Larson's treatise. A. Larson, *The Law of Workmen's Compensation*, § 97.51. However, a reading of that section reveals that Larson agrees that absent a statutory offset provision, any offset must be against the disability plan benefits, not the workers' compensation benefits.

**3.** Income benefits for total disability are only 66⅔ % of the employee's average weekly wage, subject to a maximum of not more than 100% of the

ous employer wants to supplement workers' compensation benefits with other employee benefit packages, even to the extent that disability retirement becomes more lucrative than employment, who are we to object? An employer who wishes to avoid that result can do so simply by writing into his disability plan a provision integrating its benefits with workers' compensation benefits, just as Eastern has integrated the benefits of this plan with social security benefits. However, no matter how many private benefit packages an employer provides for his employees, those benefits cannot be applied to reduce income benefits mandated by the workers' compensation act absent some statutory authority to do so.

Accordingly, we withdraw the *dicta* set forth in *American Standard* and *GAF, supra,* which would imply that a credit for an employer-funded disability pension benefit might sometimes be authorized, and we overrule *Beth–Elkhorn v. Lucas, supra,* and *Conkwright v. Rockwell International, supra.*

The opinion of the Court of Appeals is affirmed in that it disallows prospective credit for future benefits and reversed and remanded to disallow Eastern's claim for credit for past due benefits.

All concur.

state's average weekly wage as determined by the formula set forth in KRS 342.740. Income benefits for partial disability are only 66⅔% of the employee's average weekly wage, subject to a maximum of not more than 75% of the state's average weekly wage. KRS 342.730(1)(a) and (b). Thus, an employee with an income in excess of the state's average weekly wage will suffer a significant loss of income even if he is paid maximum workers' compensation benefits.