Barbara McDOWELL, Appellant,

v.

JACKSON ENERGY RECC; Ronald W. May, Administrative Law Judge; and Workers' Compensation Board, Appellees,

and

Jackson Energy RECC, Cross–Appellant,

v.

Barbara McDowell, Cross–Appellee,

and

Ronald W. May, Administrative Law Judge; and Workers' Compensation Board, Appellees.

Nos. 2000–SC–0218–WC, 2000–SC–0318–WC.

Supreme Court of Kentucky.

Aug. 22, 2002.

Thomas W. Moak, Stumbo, Moak and Nunnery, Prestonsburg, Counsel for Appellant/Cross–Appellee Barbara McDowell.

Thomas L. Ferreri, Ferreri and Fogle, Louisville, Counsel for Appellee/Cross–Appellant Jackson Energy Reco.

COOPER, Justice.

Appellant/Cross–Appellee Barbara McDowell was born December 18, 1936. She was employed by Appellee/Cross–Appellant Jackson Energy RECC from October 1, 1958, until May 29, 1997, when she became permanently and totally disabled due to bilateral carpal tunnel syndrome. By an opinion and award of an administrative law judge (ALJ) rendered on February 16, 1999, she was awarded compensation benefits for permanent total disability. KRS 342.730(1)(a). However, the award noted that McDowell would reach age 65 on December 18, 2001, and that, pursuant to KRS 342.730(4), her entitlement to compensation benefits would terminate on that date. The sole issue on appeal is McDowell's claim that KRS 342.730(4) violates Sections 14, 54 and 241 of the Constitution of Kentucky and the Due Process and Equal Protection Clauses of the United States Constitution.

The operative language of KRS 342.730(4) is:

All income benefits payable pursuant to this chapter shall terminate as of the date upon which the employee qualifies for normal old-age Social Security retirement benefits under the United States Social Security Act, 42 U.S.C. secs. 301 to 1397f, or two (2) years after the employee's injury or last exposure, whichever last occurs.

The Workers' Compensation Board declined to address the issue, citing its lack of authority to pass on the constitutionality of a statute. See Blue Diamond Coal Co. v. Cornett, 300 Ky. 647, 189 S.W.2d 963 (1945). The Court of Appeals held that the statute was unconstitutional as written and, thus, interpreted it not to require that benefits terminate when the employee qualifies for social security retirement benefits but to require a dollar-for-dollar offset of social security benefits

actually received against workers' compensation benefits otherwise payable. McDowell appeals, and Jackson Energy RECC cross-appeals from that decision. Ky. Const. § 115.

## I. JURAL RIGHTS.

McDowell claims KRS 342.730(4) violates the so-called "jural rights" doctrine, the premise of which is that Sections 14, 54, and 241 of the Kentucky Constitution, when read together, preclude any legislation that impairs a right of action in negligence that was recognized at common law prior to the adoption of the 1891 Constitution. See generally, Williams v. Wilson, Ky., 972 S.W.2d 260 (1998); Ludwig v. Johnson, 243 Ky. 533, 49 S.W.2d 347 (1932). It is sufficient to say that there was no cause of action under pre–1891 common law for a gradual repetitive motion injury caused by the normal performance of the functions of a worker's employment.

[I]t is well settled that the ordinary dangers of the business are assumed by the employés who undertake to carry it on. The employer does not insure an employé against injury in the performance of his duties. If he furnishes him a reasonably safe place in which to work, reasonably safe material with which to work, and where he is engaged with others, sees to it that the co-employés are sufficient in number to do the work in hand in a reasonably safe manner, and are reasonably fitted for and skilled in the performance of the joint duty, this is all that the employé has a right to expect or demand. The petition ... shows that all these duties were performed by the employer, and the conclusion is therefore irresistible that his injury was caused by the danger or risk inherent in the business, and which he therefore assumed when he undertook it.

*Fuller v. Illinois Cent. R. Co.,* 138 Ky. 42, 127 S.W. 501, 502 (1910). *See Shamrock Coal Co., Inc., v. Maricle,* Ky., 5 S.W.3d 130, 134 (1999) (there was no pre–1891 common law right of action for category one pneumoconiosis). Furthermore, McDowell waived her rights under Sections 14, 54, and 241 upon her acceptance of the provisions of the Workers' Compensation Act. *M.J. Daly Co. v. Varney,* Ky., 695 S.W.2d 400, 403 (1985), *overruled on other grounds, United States Fid. & Gty Co. v. Technical Minerals, Inc.,* Ky., 934 S.W.2d 266, 269 (1996).

## II. DUE PROCESS.

■ McDowell's Due Process argument is that KRS 342.730(4) deprives her of her property right in workers' compensation benefits to which she otherwise would be entitled under KRS 342.730(1)(a). The United States Supreme Court has held that a person receiving welfare benefits under statutory and administrative standards defining eligibility for them has an interest in those benefits that is safeguarded by procedural due process. *Goldberg v. Kelly,* 397 U.S. 254, 262, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970). However, as stated in *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972):

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Id.* at 577, 92 S.Ct. at 2709.

■ KRS 342.730(4) was enacted in 1996. 1996 Ky. Acts (ex. sess.), ch. 1, § 30(4), eff. December 12, 1996. Its effect was to limit the duration of any workers' compensation award payable under KRS 342.730 for an injury occurring after its effective date. *Meade v. Reedy Coal Co.,* Ky., 13 S.W.3d 619, 620 (2000) (the law on the date of injury controls the rights of the parties with respect to a workers' compensation claim); *Maggard v. International Harvester Co.,* Ky., 508 S.W.2d 777 (1974). McDowell's cause of action did not arise until May 29, 1997, so any property right that she now has to workers' compensation benefits is defined by the statutory scheme in effect on that date. By the terms of that statutory scheme, she acquired a property right in workers' compensation benefits only for the period from the date of her injury until her sixty-fifth birthday. *Cf. Tatum v. Mathews,* 541 F.2d 161, 165 (6th Cir.1976). Regardless, procedural due process does not preclude termination of benefits but only termination of benefits without prior notice and hearing. *Goldberg v. Kelly, supra,* at 267–68, 90 S.Ct. at 1020. The benefits to which McDowell claims entitlement were not terminated; they simply were not awarded. She was, however, awarded the maximum benefits allowed by the provisions of the act that were in effect on the date of her injury.

## III. EQUAL PROTECTION.

■ McDowell does not specify precisely how KRS 342.730(4) discriminates against her to the extent that she has been denied her constitutional right to equal protection under the law. U.S. Const. amend. XIV; Ky. Const. § 3. She makes a general claim that the statute is "unfair," that "[t]he executive and legislative branches of Government in the state of Kentucky have abandoned injured workers," and that "[i]t is the duty of the judicial branch to stand up for the rights of the citizens of Kentucky." Fairness, however, is an aspect of public policy reserved to the legislature. Our task is not to determine whether a statute is unfair but whether it is unconstitutional. As noted in *Williams v. Eastern Coal Corp.,* Ky.,

952 S.W.2d 696 (1997), "[w]orkers' compensation is a creature of statute," and "[w]hen an employer and employee submit themselves to the provisions of the act, their rights and liabilities are henceforth to be measured by the terms of the act." *Id.* at 698; *see also Morrison v. Carbide and Carbon Chemicals Corp.,* 278 Ky. 746, 129 S.W.2d 547, 549 (1939). A constitutional challenge on equal protection grounds presupposes that a statute is discriminatory, thus, perceptually unfair. When the statute is a workers' compensation statute, the issue becomes whether there is a rational basis for the perceived discrimination. *Steven Lee Enterprises v. Varney,* Ky., 36 S.W.3d 391, 395 (2000). We note at the outset that KRS 342.730(4) is not the first or only statute to place limitations on the duration of workers' compensation awards. Until 1973, the maximum duration of awards of permanent total disability benefits was arbitrarily set at 425 weeks. KRS 342.095 (repealed, 1972 Ky. Acts, ch. 78, § 36, eff. January 1, 1973). That is still the maximum duration for benefits for permanent partial disability awards of less than fifty percent. KRS 342.730(1)(d).

The foremost authority on the law of workers' compensation reports that seventeen states and the District of Columbia offset their workers' compensation benefits against social security benefits in some manner and that the constitutionality of these provisions has been largely upheld against equal protection challenges. Arthur Larson and Lex K. Larson, 9 *Larson's Workers' Compensation Law* § 97.35(a) and (b) (Matthew Bender 1997). *See, e.g., Injured Workers of Kansas v. Franklin,* 262 Kan. 840, 942 P.2d 591, 609–14 (1997) (benefits offset by social security "retirement benefits" and private pension plan retirement benefits); *Berry v. H.R. Beal & Sons,* 649 A.2d 1101 (Me.1994) (benefits reduced by 50% of amount of

social security "retirement benefits" received); *Tobin's Case,* 424 Mass. 250, 675 N.E.2d 781, 783 (1997) (benefits terminate when claimant is over age 65 and eligible for social security "benefits" or private pension benefits paid entirely or in part by the employer, unless the employee can establish that but for the injury he/she would have remained active in the labor market); *Vogel v. Wells Fargo Guard Services,* 937 S.W.2d 856, 858 (Tenn.1996) (benefits terminate when claimant reaches age. 65); *Harris v. State Dept. of Labor and Indus.,* 120 Wash.2d 461, 843 P.2d 1056, 1057 (1993) (benefits reduced by amount of social security "retirement benefits" received). And in *Richardson v. Belcher,* 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971), the United States Supreme Court rejected an equal protection challenge to section 224 of the Social Security Act (42 U.S.C. § 424a), which provides an offset for social security *disability* benefits against state workers' compensation benefits. (Disability benefits are converted into retirement benefits at age 65.)

Larson, *supra,* questions why all states do not provide some form of offset for workers' compensation benefits against social security benefits:

It may seem odd, with the intense concern about compensation costs, that the states have been so slow to exploit this obvious way to reduce their compensation burden. Although the federal offset in its present form was enacted in 1965, thus ensuring that there would be a ceiling on the combined benefits and that the federal Social Security program would reap all the benefit from the elimination of the overlap, by 1975—10 years later—only three states had countered with offset provisions of their own: Colorado, Montana, and Minnesota. Then, rather rapidly, the number grew to about 16, but with more than two-thirds

of the states still forgoing this cost-cutting opportunity.

*Id.* § 97.35(a), at 18–42–43. Larson concludes that the answer is found in the 1981 amendment of 42 U.S.C. § 424a, the Social Security disability benefits statute.

> The federal government in turn, belatedly awakening to the fact that the states were beginning to enjoy shifting part of their compensation burden to the Social Security system, enacted legislation effectively ruling out any future adoptions of offsets [against disability benefits] at the state compensation end.

Larson, § 97.35(a), at 18–43. The 1981 amendment of 42 U.S.C. § 424a limited state "reverse offset" statutes to only those states that already had such statutes in place as of February 18, 1981:

> (d) The reduction of benefits required by this section shall not be made *if the law* or plan described in subsection (a)(2) of this section under which a periodic benefit is payable *provides for the reduction thereof when anyone is entitled to benefits under this subchapter* on the basis of wages and self-employment income of an individual entitled to benefits under section 423 of this title, *and such law* or plan *so provided on February 18, 1981.*

Pub.L. 97–35, § 2208 (1981) (42 U.S.C. § 424a(d)) (emphasis added).

In *Harris v. State, Department of Labor and Industries, supra,* the Supreme Court of Washington noted that 42 U.S.C § 424a(d) applies only to social security *disability* benefits and does not preempt a state statute providing a reverse offset of social security *retirement* benefits against state workers' compensation benefits. 843 P.2d at 1060–61. For purposes of an equal protection "rational basis" analysis, we perceive no distinction between an offset of state workers' compensation benefits against Social Security disability benefits,

*Richardson v. Belcher, supra,* and a reverse offset of social security retirement benefits against state workers' compensation benefits.

From 1980 to 1982, Kentucky had a statute, the 1980 version of KRS 342.730(1)(b), that provided that permanent partial disability benefits "shall not be paid after the employee becomes eligible for normal old age benefits under the federal old age, survivors and disability insurance act." 1980 Ky. Acts, ch. 104, § 15(1)(b) (repealed, 1982 Ky. Acts, ch. 278, § 23(1)(b)). A constitutional challenge to that statute, which had virtually identical language to that now found in KRS 342.730(4), was rejected in *Brooks v. Island Creek Coal Co.,* Ky.App., 678 S.W.2d 791 (1984). No doubt, the 1980 General Assembly inserted that language in KRS 342.730(1)(b) for the very reason suggested by Larson, *supra.* And, no doubt, the 1996 General Assembly reinserted that language in KRS 342.730(4) for the same reason.

*Wynn v. Ibold,* Ky., 969 S.W.2d 695 (1998), was an equal protection challenge to the "tier down" provision of the pre–1996 version of KRS 342.730(4) that required an annual 10% reduction in income benefits beginning at age 65 and continuing through age 70. We unanimously held in *Wynn* that avoiding duplication of income benefits and reducing the overall cost of maintaining the workers' compensation system, thereby improving the economic climate for all citizens of the state, provided a rational basis for any perceived discrimination in the statute. *Id.* at 697. The same rationale applies to this challenge to the 1996 version of KRS 342.730(4).

■ McDowell suggests that the enactment of Public Law 106–182 (2000) (42 U.S.C. 403(f)(8)(E)), the "Senior Citizens

Freedom to Work Act of 2000," which reduced from 70 to 65 the age at which an earnings test would not be applied to reduce social security benefits, supports her equal protection challenge to KRS 342.730(4). Her argument seems to be that, under Public Law 106–182, employed persons over age 65 are now entitled to a duplication of benefits whereas, under KRS 342.730(4), she is not. Earned income, however, is not a welfare benefit, so Public Law 106–182 did not create a duplication of "benefits." It simply extended to employed persons over age 65 the same right to receive social security benefits that was previously extended only to unemployed persons over age 65. In that respect, its passage was anti-discriminatory in nature, and its obvious purpose was to encourage qualified older workers to remain in the work force in a then-booming economy in which there were more "high-tech" jobs available than skilled workers to fill them. We note in passing that one rational basis for precluding duplication of welfare benefits is to avoid making unemployment so lucrative as to discourage potential workers from returning to the work force.

Public Law 106–182 did not extend to unemployed persons over age 65 a right to receive earned income, for which workers' compensation benefits are intended as a substitute, but only extended to employed persons over age 65 the right to receive social security retirement benefits in addition to any earned income. Nor did it purport to extend to anyone the right to draw workers' compensation benefits. Thus, the act had no effect on McDowell who was already entitled to draw social security benefits at age 65. Specifically, it did not confer upon her the right to draw workers' compensation benefits in addition to social security retirement benefits.

■■■■■ Having determined that KRS 342.730(4) is not unconstitutional, we affirm the Court of Appeals with respect to McDowell's direct appeal. We also reverse the Court of Appeals with respect to Jackson Energy RECC's cross-appeal. The language of KRS 342.730(4) affords no basis for a construction that it provides only for an offset of social security benefits against workers' compensation benefits. The statute clearly states that workers' compensation benefits "shall terminate" when the employee qualifies for social security retirement benefits.

> To determine legislative intent, a court must refer to "the words used in enacting the statute rather than surmising what may have been intended but was not expressed." ... Similarly, a court "may not interpret a statute at variance with its stated language."

*Hale v. Combs*, Ky., 30 S.W.3d 146, 151 (2000) (quoting *Commonwealth v. Allen*, Ky., 980 S.W.2d 278, 280 (1998)). Put another way, "courts must presume that a legislature says in a statute what it means and means in a statute what it says ... [and][w]hen the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992).

JOHNSTONE, STUMBO, and WINTERSHEIMER, JJ., concur.

GRAVES, J., dissents by separate opinion, with LAMBERT, C.J., and KELLER, J., joining that dissent.

GRAVES, Justice, dissenting.

Respectfully, I must dissent.

KRS 342.730(4),[1] which requires that workers' compensation benefits terminate

---

1. As amended effective December 12, 1996,      the statute provides as follows:

when the recipient qualifies for normal old-age social security, violates the United States and Kentucky Constitutions because it denies equal protection of the law to the Commonwealth's older workers. Furthermore, the changing nature of the federal social security regime demonstrates that the statute's rationale is not to provide compensation for lost wages.

## I. FACTS

This case arises from a Court of Appeals decision affirming the views of both the Workers' Compensation Board and an Administrative Law Judge that awarded Appellant Barbara McDowell permanent, total disability that would terminate when she reached age 65. Appellant began working for Jackson Energy RECC as a billing clerk and cashier in 1958. Her duties involved the repetitive use of her fingers and hands for 39 years. Eventually she began to experience pain and numbness in her hands that interfered with her work and for which conservative medical treatment was ineffective. Throughout her 39 years of employment, she had an excellent work history. Ultimately, she underwent surgery for bilateral carpel tunnel syndrome in May 1997. Although her hands improved somewhat, she was unable to return to work and filed a workers' compensation claim. She testified that she had hoped to be able to work until age 62 in order to be eligible for full retirement benefits.

The Administrative Law Judge determined that Appellant had sustained a per-

manent, total disability as of May 30, 1997, and awarded income benefits to begin on that day and terminate when she reached age 65. The ruling as to termination was based on KRS 342.730(4), as amended effective December 12, 1996. Appellant appealed claiming that the statute was unconstitutional. The Board affirmed the ALJ, as did the Court of Appeals, which upheld the constitutionality of the statute, determining that it provided for an offset of benefits in an amount equal to that of old age social security benefits that the claimant would be entitled to receive on her 65th birthday. Appellant argues that the statute violates Sections 14, 54, and 241 of the Kentucky Constitution by depriving her the right to be fully compensated for her injury. She further argues that the provision violates the Fifth and Fourteenth Amendments to the United States Constitution by taking property from her in violation of her due process right to fair compensation, and in violation of her right to equal protection under the law.

## II. STRUCTURE OF THE BENEFITS PROGRAMS

As Professor Larson notes in his workers' compensation treatise, "[s]ince most social legislation in the United States has appeared in unrelated fragments, lack of coordination resulting in cumulation of benefits is quite common." Larson's Workers' Compensation Law 157–1 (Lexis ed.2001). In trying to impose some after-the-fact coordination on these schemes,

All income benefits payable pursuant to this chapter shall terminate as of the date upon which the employee qualifies for normal old-age Social Security retirement benefits under the United States Social Security Act, 42 U.S.C. secs. 301 to 1397f or two (2) years after the employee's injury or last exposure, whichever occurs last. In like manner all income benefits payable pursu-

ant to this chapter to spouses and dependents shall terminate when such spouses and dependents qualify for benefits under the United States Social Security Act by reason of the fact that the worker upon whose earnings entitlement is based would have qualified for normal old-age Social Security retirement benefits.

jurisdictions have split, based on their views of legislative intent, on whether an injured, older worker may be eligible for both social security and workers' compensation benefits.

While most workers are required by federal law to participate in the social security program and are covered by the old-age social security program, all are not. Certain types of employment are exempt, and state and local government employees are covered only to the extent of the state's "Section 218" agreement with the federal government. A state may require employees who are not covered by a state or local retirement system to participate in social security; whereas, employees who are covered by a state or local retirement system cannot be required to participate in social security unless a majority of them vote in favor of such coverage. Social Security Administration's *Social Security Handbook* (13th ed.1997) secs. 1000–1019. Kentucky teachers, for example, have a retirement program and do not participate in social security. Other groups may participate in both retirement programs and social security.

By basing a worker's entitlement to income benefits after reaching the "normal" retirement age for old-age social security upon whether the worker qualifies for social security, KRS 342.730(4) unfairly discriminates against injured workers who are required to participate in social security, particularly those who have no other pension. Those who do not qualify for "normal" old-age social security are guaranteed an income that is commensurate with their occupational disability, but those who qualify for "normal" old-age social security are not. In contrast, those who are entitled to other types of public or private pensions may receive both a workers' compensation income benefit and their public or private pension.

## III. RATIONAL BASIS

This Court has stated that the primary purpose for the enactment of KRS 342.730(4) was to minimize the duplication of benefits. However, all previous cases exploring this issue that state that social security is no more than another form of income replacement, were rendered before the 2000 amendments to the Social Security Act, and relate to social security law as it existed before the amendments. When KRS 342.730(4) was written, social security laws mandated that persons could not work while receiving social security benefits, making the benefit solely a replacement for wages lost in retirement. To a large extent this rationale resulted in a duplication of workers' compensation, which replaced wages lost due to work-related injury. Since the enactment of KRS 342.730(4), however, recent changes in social security law now allow older citizens not only to work but also to receive benefits.

Because of the federal government's revised stance on the availability of social security benefits to the working recipient, a relationship no longer exists between KRS 342.730(4) and the Commonwealth's interest in avoiding a duplication of benefits. Both the rationale and the source of funding behind the two sets of social legislation belie their overlap. As noted above, workers' compensation replaces earning capacity. Social security is now most closely equated to a return on monies invested. Workers' compensation is a wage-loss benefit given to persons injured on the job, financed by state employers through a state program, in lieu of a possible tort action against the employer. This arrangement puts the burden of the injury on the industry because it is in the best position to factor in the cost and to encourage worker safety. Social security is oper-

ated by the federal government and can no longer be viewed as a wage-loss benefit in light of the fact that gainfully employed persons are also allowed to draw social security based solely upon their age. This view has been taken by various states in recent years, including Arkansas, Colorado, and West Virginia. *Golden v. Westark Community College*, 333 Ark. 41, 969 S.W.2d 154, 158–60 (1998); *Industrial Claim Appeals Office v. Romero*, 912 P.2d 62, 67–68 (Colo.1996); *State v. Richardson*, 198 W.Va. 545, 482 S.E.2d 162 (1996).

Historically, old-age social security was intended to replace income lost as a result of retirement. Consequently, those unable to work due to advancing age did not become dependent on the public. However, when the program was enacted, most workers did not live beyond age 65, then the "normal" retirement age for the program. Life expectancies have since increased. Many individuals now must work beyond the "normal" retirement age for their birth date, and many others must do so because their social security benefit, as their only other source of income, fails to meet their essential needs.

Since the amendments, the Social Security Act now provides that earnings are not to be deducted from the old-age social security benefits of those workers who have reached the normal retirement age for their birth date. 42 U.S.C. 403(f)(8)(E). Whereas, those who elect to receive benefits beginning at age 62 and who have not yet reached their "normal" retirement age remain subject to the income limitations that are contained in Subsection (D). Therefore, although old-age social security continues to provide income replacement for those older workers who quit working altogether, it is also apparent that the legislative intent behind the old-age benefit has changed. Congress now appears to view old-age social security as

being more like a contractual benefit. For those who continue to work after reaching the "normal" retirement age, the benefit provides an income supplement, the amount of which is based upon their prior contributions to the social security program. When social security benefits eclipse workers' compensation benefits, there's a disincentive for those 65 or older to work. This is due to the utter void of wage-loss benefits available in the event of a workplace injury. The end result of this discrimination is that older workers are slowly phased out of the work force. As described in *Richardson, supra:*

> It appears that under [the state code], any permanent total disability award to those [older workers collecting social security] would be subject to reduction by reason of social security based on work before their "retirement." The courts of Michigan and Florida have sustained similar provisions—based directly on age or on eligibility for social security—on the minimum scrutiny "rational basis" that such provisions of workers' compensation laws, similar to ours under discussion encourage retirement of older workers and make way for young workers.

*Id.*, 482 S.E.2d at 171. While *Richardson* ultimately was not based on this argument, I would note that encouraging older workers to leave jobs for which they are qualified is not a rational basis for any statute. This is, however, an unfortunate result of KRS 342.730(4).

## IV. METHODS OF FUNDING AND BENEFIT DETERMINATION

Finally, the method of funding for each program differs substantially. Workers' compensation benefits are funded solely by the employer. Social security is a federal program that is funded through equal contributions by workers and employers. Also workers may now elect to receive old-

age benefits at age 62. By terminating workers' compensation income benefits when the recipient becomes eligible for "normal" old-age social security, KRS 342.730(4) has made a worker's entitlement to income benefits for lost earning capacity subject to the provisions of the federal Social Security Act. This shifts liability from the employer to the public for the worker's support.

Part of the rationale supporting KRS 342.730(4) is that the employer contributions fund both social security and workers' compensation benefits. This overlooks the fact that although employers contribute the entire workers' compensation premium, they contribute only half of the social security premium. Workers contribute the other half. KRS 342.730(4) operates to terminate a benefit that employers fully fund by virtue of qualification for a benefit that they only partially fund and the public guarantees. Since employers are relieved of liability, older workers in effect subsidize their own wage loss benefit.

KRS 341.730(4) terminates workers' compensation benefits simply because a worker "qualifies for normal old-age Social Security benefits," without regard to the amount of social security benefit that worker will receive. Thus, even a minimal amount of social security benefit terminates the entire workers' compensation income benefit and relieves the employer of its entire remaining liability (assuming that it has paid at least two years of benefits). Yet, benefits under the two programs are determined in entirely different manners.

The amount of a workers' compensation benefit is based upon the recipient's average weekly wage (or state's average weekly wage) at the time of injury; whereas, the amount of a social security benefit is based upon the aggregate of the recipient's wages. Social security has never covered all types of employment. Thus, longtime workers may well have contributed little to the social security program and, therefore, be eligible for only minimal old-age benefits. Under those circumstances, it is arbitrary to view one benefit as replacing the other or to equate the fact that a worker is eligible for "normal" old-age social security with the income benefit that is set forth in KRS 342.730(1) or KRS 342.732.

In short, while the Commonwealth's desire to eliminate duplicative benefits is appropriate and necessary for the preservation of workers' compensation, the means chosen for achieving that goal are improper in this instance because it draws an impermissible difference between the similarly situated classes of social security recipients who continue to supplement their benefits by working and social security recipients who would continue to supplement their incomes except for work-related injuries. KRS 342.730(4) is a violation of the equal protection guaranteed by our state and federal constitutions and should be repealed.

I would find that KRS 342.730(2) violates the equal protection provisions of both the United States and the Kentucky Constitutions. Consequently, I would reverse the decision of the Court of Appeals and remand this matter to the Workers' Compensation Board for an award of benefits.

LAMBERT, C.J., and KELLER, J., join this dissent.